UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Lezhen Liu, a.k.a. Jennifer Liu

_____CV__________

Plaintiff

-against-

Do you want a jury trial?

☐ Yes ☑ No

NewYork-Presbyterian Hospital

Gracie Square Hospital

Defendants

I. BASIS FOR JURISDICTION

What is the basis for federal-court jurisdiction in your case?

Federal Question

A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

1. The Fourteenth Amendment — procedural and substantive due process (enforceable under 42 U.S.C. § 1983).

2. The Americans with Disabilities Act — Title II (integration mandate / unnecessary institutionalization).

3. The Rehabilitation Act — Section 504 (disability discrimination by entities receiving federal financial assistance).

The defendant, NewYork-Presbyterian Hospital, is incorporated under the laws of the State of New York and has its principal place of business in New York, NY.

The defendant, Gracie Square Hospital, is incorporated under the laws of the State of New York and has its principal place of business in New York, NY.

II. PARTIES

A. Plaintiff Information

| | |
|---|---|
| Lezhen a.k.a. Jennifer | Liu |
| First Name | Last Name |

212 West 124th Street, Apt 6C
Street Address

| | | |
|---|---|---|
| New York | NY | 10027 |
| County | State | Zip Code |

(646)809-3067
Telephone Number

letjusticebedone@proton.me
Email Address

B. Defendant Information

Defendant:

NewYork-Presbyterian Hospital, a New York -incorporated healthcare institution

Current Job Title (or other identifying information)

622 W 168 Street, PH 2W

Current Work Address

| | | |
|---|---|---|
| New York | NY | 10032 |
| County | State | Zip Code |

Defendant:

Gracie Square Hospital, a New York -incorporated healthcare institution

Current Job Title (or other identifying information)

420 East 76th

Current Work Address

| | | |
|---|---|---|
| New York | NY | 10021 |
| County | State | Zip Code |

III. STATEMENT OF CLAIM

Place(s) of occurrence:

NewYork-Presbyterian Brooklyn Methodist Hospital

Gracie Square Hospital

Date(s) of occurrence:

May 21, 2021 to July 14, 2023

## PRELIMINARY STATEMENT

Defendant NewYork-Presbyterian Hospital ("NYP") is a nonprofit academic hospital corporation that coordinates and operates multiple hospital campuses, including NewYork-Presbyterian Brooklyn Methodist Hospital. Defendant Gracie Square Hospital is an affiliated inpatient psychiatric facility within the NewYork-Presbyterian network and is the location where the events described in this Complaint occurred. Although affiliated, NYP and Gracie Square are distinct legal entities, each bearing responsibility for its respective role in Plaintiff's care and transfers.

Plaintiff's psychiatric admissions and related transfer records were generated through NYP facilities and maintained within NYP's shared medical-records platform.

In 2021, NewYork-Presbyterian Brooklyn Methodist Hospital, acting through its emergency department, initiated and coordinated Plaintiff's transfers to Gracie Square Hospital, where Plaintiff was thereafter admitted — and later readmitted — on voluntary status. These transfers were arranged through internal NYP processes and involved direct communication between NYP's Brooklyn campus and Gracie Square.

FACTS:

1. On May 21, 2021, Plaintiff was voluntarily admitted to Gracie Square Hospital for psychiatric treatment, following an emergency evaluation at NewYork-Presbyterian Brooklyn Methodist Hospital, whose emergency department initiated her psychiatric transfer.

2. During this first hospitalization at Gracie Square Hospital, Plaintiff was diagnosed with a mood disorder.

3. On July 26, 2021, Plaintiff was again voluntarily admitted to Gracie Square Hospital for psychiatric treatment, following an emergency evaluation at NewYork-Presbyterian Brooklyn Methodist Hospital, whose emergency department initiated her psychiatric transfer.

4. After Plaintiff's voluntary readmission, and during in-person clinical conversations, Gracie Square Hospital's supervising psychiatrist, Chainllie Young, consistently told Plaintiff that she had "ruined his professional reputation," and further stated that Plaintiff was "the only patient he had ever seen who was discharged on July 22, 2021 and then returned to the same inpatient unit on July 26, 2021."

5. Because Plaintiff never received notice of Gracie Square Hospital's September 2, 2021 "Application for Court Authorization to Retain a Patient," Plaintiff likewise did not receive any copies of the papers for the September 16, 2021 mental-hygiene hearing in the Supreme Court of New York County.

In September 2023, Plaintiff emailed the Director of the Mental Hygiene Legal Service in Albany to inquire about the 2021 court records. The Director advised Plaintiff to obtain the records directly from the Supreme Court. On September 22, 2023, Plaintiff obtained certified copies from the Court, including Gracie Square Hospital's retention application and the order issued by Hon. Kelly O'Neill Levy.

6. At no point during Plaintiff's voluntary admission between July 26, 2021 and September 2, 2021 did Gracie Square Hospital inform Plaintiff of her statutory 72-hour right to request discharge. Instead, on September 2, 2021 — more than five weeks later — the hospital applied for involuntary retention.

7. On September 16, 2021, the Supreme Court of New York County issued an order in Index No. 530725-21, signed by Hon. Kelly O'Neill Levy.

8. The Order only authorized Plaintiff's psychiatric retention for a period not to exceed sixty (60) days.

9. Between July 26, 2021 and October 13, 2021, while Plaintiff was confined as an inpatient at Gracie Square Hospital, the crown on a back tooth fell out. Plaintiff thereafter sought authorization from Gracie Square Hospital's supervising psychiatrist, Chainllie Young, for an emergency dental evaluation outside the facility. Psychiatrist Young repeatedly refused these requests, stating that the hospital would not authorize outside dental care because of budget restrictions.

10. Between September 24, 2021 and October 1, 2021, Gracie Square Hospital's notes consistently reflected that Plaintiff remained calm, cooperative, and without behavioral incidents.

On September 24, 2021, the hospital treatment team informed Plaintiff that Creedmoor Psychiatric Center — a state-run long-term psychiatric institution — had accepted her for institutional placement. Although Plaintiff explicitly objected to the transfer, the hospital nevertheless proceeded to finalize the transfer arrangements. Despite this, contemporaneous entries in the medical record continued to document that Plaintiff remained calm, cooperative on the unit, and able to contract for safety.

11. On October 13, 2021, while Plaintiff remained under Gracie Square Hospital's care and custody, Plaintiff was transferred to Creedmoor, without any court order authorizing the transfer.

12. Upon information and belief, while Plaintiff was at Creedmoor, the unit medical physician scheduled follow-up neurology appointments at a clinic affiliated with NewYork-Presbyterian / Weill Cornell Medical Center for ongoing evaluation and monitoring in light of Plaintiff's documented brain aneurysm and history of traumatic brain injury. Because Plaintiff remained an inpatient, an escort accompanied her to each appointment. These visits were with the same neurology clinic that had followed Plaintiff prior to her institutionalization.

13. Following Plaintiff's discharge from Creedmoor's inpatient unit, the New York State Office of Mental Health ("OMH") terminated Plaintiff's Medicaid coverage effective August 2022.

14. Plaintiff was administratively discharged from a Creedmoor-operated residential program on July 14, 2023.

INJURIES:

As a direct result of Gracie Square Hospital's conduct, Plaintiff suffered deprivations of liberty and autonomy, in circumstances implicating rights protected by the Due Process Clause of the Fourteenth Amendment and the Americans with Disabilities Act. As a foreseeable and natural consequence, Plaintiff has sustained ongoing and permanent injuries, including but not limited to the following:

1. Liberty Deprivation Resulting from Voluntary Status

Plaintiff was deprived of liberty and personal autonomy as a direct result of Gracie Square Hospital's failure to inform Plaintiff of her statutory 72-hour right to request discharge during her voluntary psychiatric admission.

Because the hospital did not provide this notice, Plaintiff was not able to exercise her discharge right, and her "confinement" continued.

2. Liberty Deprivation Resulting from Unauthorized Transfer and Extended Retention

Hon. Kelly O'Neill Levy's September 16, 2021 order did not authorize Gracie Square Hospital to transfer Plaintiff to Creedmoor Psychiatric Center.

On October 13, 2021, despite the lack of judicial authorization and over Plaintiff's explicit objections, Gracie Square Hospital transferred Plaintiff to Creedmoor. Plaintiff was thereafter placed under Creedmoor's authority for approximately twenty-one (21) months, consisting of inpatient confinement through August 3, 2022, followed by mandatory outpatient supervision

until July 14, 2023. Plaintiff continues to endure physical, mental, emotional, and psychological injuries resulting from this extended deprivation of liberty and personal autonomy.

3. Forced Medication and Continuing Harm

Beginning on October 13, 2021, Plaintiff was compelled to take multiple high-dose psychiatric medications concurrently while confined as an inpatient at Creedmoor. Following her discharge on August 3, 2022, a one-year Assisted Outpatient Treatment ("AOT") order issued by a New York State court continued psychiatric medications through August 2023.

In total, Plaintiff was subjected to psychiatric medications for approximately twenty-two (22) consecutive months. During this period, clinical records document new metabolic conditions, elevated blood sugar, lipid abnormalities, thyroid dysfunction, and significant weight gain. These conditions necessitated additional prescribed medical medications and ongoing monitoring to treat adverse effects of the psychiatric drugs. These findings are reflected in NYP's medical records and persisted beyond the expiration of the AOT order in August 2023.

Plaintiff continues to sustain physical, mental, emotional, and psychological injuries attributable to this long-term and medically-imposed exposure to psychiatric medications.

4. Functional and Personal Impairment

Plaintiff "experienced"loss of basic functioning and independence, interference with activities of daily living, and ongoing difficulty returning to normal daily life following lengthy inpatient treatment at a state psychiatric facility, including relentless fear and hesitation in seeking psychiatric services.

5. Stigma, Identity, and Loss of Dignity

Plaintiff continues to bear lasting stigma and permanent dignitary injury arising from state psychiatric “institutionalization”, including damage to reputation, credibility, integrity, and sense of identity.

6. Exposure to Sexual Violence and Severe Harm

As a foreseeable result of Plaintiff’s “placement”at Creedmoor, Plaintiff was exposed to an unsafe state-institutional environment. While residing in Creedmoor’s outpatient program, Plaintiff was the victim of an attempted sexual assault on the Creedmoor campus.

This incident caused severe and lasting physical, mental, emotional, and psychological injuries, including fear for personal safety, loss of a sense of security, and ongoing trauma.

7. Permanent Dental Injury

After the crown on a back tooth fell off during Plaintiff’s hospitalization at Gracie Square Hospital, Plaintiff developed escalating dental pain and infection, and the same tooth was later surgically extracted on an emergency basis while Plaintiff was an inpatient at Creedmoor.

8. Financial and Medical-Care Hardships

Plaintiff’s Medicaid coverage was terminated beginning in August 2022 following her discharge from Creedmoor’s inpatient unit, and she remained uninsured for a substantial period beyond her July 14, 2023 release from Creedmoor’s outpatient treatment. As a result, Plaintiff was unable to obtain prescription medication, any follow-up medical care and faced significant financial strain and practical hardship.

9. Loss of Personal Belongings.

During approximately thirteen (13) months of inpatient psychiatric custody between Gracie Square Hospital and Creedmoor, Plaintiff was unable to access, safeguard, or manage her

personal belongings. As a direct consequence, Plaintiff's belongings were lost, auctioned, or otherwise disposed of, causing permanent deprivation and financial loss.

10. Awareness of Neurological Vulnerability

Since May 21, 2021, Gracie Square Hospital was aware that Plaintiff had a documented brain aneurysm and a history of traumatic brain injury, as reflected in NYP's medical records and confirmed in Plaintiff's October 13, 2021 discharge records from Gracie Square Hospital.

Despite clear medical risks, documented psychiatric stability, and Plaintiff's clear and consistent objections, the hospital nevertheless arranged Plaintiff's unauthorized transfer to Creedmoor and prolonged placement under state psychiatric custody.

As a result, Plaintiff endured worsening neurological instability, increased susceptibility to complications from psychiatric medications, and multiple emergency-room visits — including one visit that led to admission to Queens General Hospital, where an invasive spinal procedure was performed over Plaintiff's repeated objections — causing additional physical, mental, emotional, and psychological harm.

11. Intrusion into Cognitive and Neurological Integrity

For approximately twenty-two (22) consecutive months, Plaintiff was forced to take high-dose psychiatric medications despite her documented brain aneurysm and history of traumatic brain injury. These medications produced cognitive blocking, impaired judgment, disorganized thinking, memory loss, and persistent mental fog.

Although contact information for Mental Hygiene Legal Services was posted and readily available on the Creedmoor inpatient unit, Plaintiff was unable to recognize her rights and unable to exercise them.

As a result, Plaintiff remained under state psychiatric supervision until she was ultimately discharged from the unit.

This interference with Plaintiff's cognitive functioning and neurological integrity resulted in lasting cognitive, physical, mental, emotional, psychological, and functional harm.

## IV. RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

### A. Monetary Relief

Plaintiff seeks compensatory and punitive damages against Defendant NewYork-Presbyterian Hospital and Defendant Gracie Square Hospital, jointly and severally, in the following amounts:

#### 1. Compensatory Damages

Compensatory damages in the amount of $60,000,000 for physical, cognitive, mental, emotional, psychological, functional, liberty, and personal-autonomy injuries, as well as financial, reputational, and dignitary harms arising from actions taken at Gracie Square Hospital and under the oversight of NewYork-Presbyterian Hospital.

#### 2. Punitive Damages

Plaintiff seeks punitive damages in the amount of $3,000,000,000 to punish Defendants for misconduct and to deter similar egregious violations in the future.

Punitive damages are appropriate because the conduct alleged reflects institutional decisions made with deliberate indifference and reckless disregard for Plaintiff's constitutional and statutory rights. Gracie Square Hospital initiated Plaintiff's transfer to Creedmoor Psychiatric

Center without court authorization and in violation of the legally required procedures for such placements, despite documented knowledge of Plaintiff's neurological vulnerability and serious medical conditions.

Creedmoor Psychiatric Center, operated by the New York State Office of Mental Health ("OMH"), accepted and completed the transfer and then retained Plaintiff for approximately ten months as an inpatient, followed by extended outpatient supervision, without first ensuring that lawful authorization, hearing rights, and due-process protections had been provided.

These failures reflect a systemic breakdown in New York's psychiatric-transfer and retention practices, in which both a private hospital and a state psychiatric institution permitted institutionalization to proceed without judicial oversight, without adequate process, and at the expense of a disabled patient's liberty, safety, and autonomy.

Plaintiff's experience demonstrates risks that extend beyond a single case. This action seeks not only redress for Plaintiff's injuries, but also enforcement of constitutional and federal disability protections designed to prevent other individuals from being subjected to the same harm.

An award of punitive damages in this amount is necessary to send a clear message to large healthcare institutions and state psychiatric systems nationwide that unlawful transfers, unnecessary institutionalization, and disregard for court authority, constitutional safeguards, and disability rights will not be tolerated, and to protect vulnerable patients — particularly individuals with psychiatric disabilities — from being exposed again to the same systemic failures.

B. Declaratory Relief

A declaration that, if proven at trial, Defendants' conduct violated Plaintiff's rights under:

- the Due Process Clause of the Fourteenth Amendment; and
- Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.,

by facilitating transfer and prolonged psychiatric institutionalization without the judicial process and safeguards required by law.

C. Injunctive and Policy-Change Relief

An injunction requiring Defendants to implement ADA-compliant and constitutional safeguards, including but not limited to:

1. Notice and a meaningful opportunity to be heard before any transfer or change in legal status from voluntary admission to state psychiatric custody.

2. Judicial authorization and adequate procedural review before any involuntary institutionalization or compelled retention.

3. Strict compliance with the ADA Title II integration mandate, and enforcement of Fourteenth Amendment due-process safeguards, to prevent unnecessary institutionalization of individuals with disabilities.

4. Written disclosure of the statutory 72-hour right to request discharge to all voluntary psychiatric patients, together with clear procedures for exercising that right.

5. Procedures ensuring timely access to outside emergency medical evaluation and treatment — including dental emergencies — when a serious medical condition cannot safely be managed within the psychiatric facility, including prompt assessment, emergency transportation when clinically indicated, and documentation of any delay in care.

6. Written documentation and periodic reporting requirements for all transfer and retention decisions, including the clinical and legal basis for each decision, to permit meaningful oversight and accountability.

7. Mandatory staff training regarding constitutional due-process protections, disability rights, and obligations under the Americans with Disabilities Act.

8. Appointment of an independent compliance monitor, with periodic reporting to the Court, to oversee implementation and ensure sustained adherence to these safeguards.

D. Further Relief

Such other and further relief as the Court deems just and proper to ensure accountability, deter recurrence, and enforce constitutional and federal law.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

12/29/25

Dated | Plaintiff's Signature

Lezhen a.k.a. Jennifer | Liu

First Name | Middle Initial | Last Name

212 West 124th Street, Apt 6C

Street Address

New York | NY | 10027

County, City | State | Zip Code

(646)809-3067 | letjusticebedone@proton.me

Telephone Number | Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.