UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEZHEN LIU, also known as JENNIFER LIU,

Plaintiff,

-against-

NEW YORK-PRESBYTERIAN HOSPITAL; GRACIE SQUARE HOSPITAL,

Defendants.

1:25-CV-10843 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, United States District Judge:

Plaintiff Lezhen Liu, also known as Jennifer Liu, who is appearing *pro se*, brings this action asserting claims of federal constitutional violations under 42 U.S.C. § 1983 and claims under Title II of the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973 ("RA"). The Court construes Plaintiff's complaint as also asserting claims under state law. Plaintiff sues: (1) New York-Presbyterian Hospital ("NYPH"); and (2) Gracie Square Hospital ("GSH"). In her complaint, Plaintiff seeks damages, injunctive relief, and declaratory relief. By order dated April 24, 2026, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[1]

For the reasons set for the below, the Court dismisses this action but grants Plaintiff 30 days' leave to replead certain claims in an amended complaint.

[1] By order dated January 21, 2026, after reviewing Plaintiff's initial IFP application, the Court directed Plaintiff to either pay the fees to bring this action or file an amended IFP application. (ECF 7.) Plaintiff responded to that order by filing a motion for reconsideration with an attached declaration describing her financial situation to demonstrate why she is unable to pay the fees to bring this action. (ECF 8.) On April 24, 2026, the Court granted Plaintiff IFP status. (ECF 12.) The Court thus denies that motion as moot.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine

whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

**BACKGROUND**

The following facts are drawn from Plaintiff's complaint and another specified submission:[2] On May 21, 2021, Plaintiff was voluntarily admitted to GSH, in New York, New York, for psychiatric treatment; she had been transferred there from New York-Presbyterian Brooklyn Methodist Hospital following an emergency evaluation at that Brooklyn hospital. At GSH, Plaintiff was diagnosed with a mood disorder. Plaintiff was discharged from GSH on July 22, 2021. Four days later, on July 26, 2021, Plaintiff was again voluntarily admitted to GSH for psychiatric treatment, having again been transferred there from the abovementioned Brooklyn hospital after an emergency evaluation. "At no point during Plaintiff's voluntary admission between July 26, 2021[,] and September 2, 2021[,] did [GSH] inform Plaintiff of her statutory 72-hour right to request discharge. Instead, on September 2, 2021—more than five weeks later—[GSH officials] applied for involuntary retention." (ECF 1, at 5.)

On September 2, 2021, GSH officials filed, with regard to Plaintiff, an Application for Court Authorization to Retain a Patient with the New York Supreme Court, New York County; Plaintiff never received a copy of that application from GSH officials. She also did not receive, at that time, any copies of records regarding a September 16, 2021 hearing that took place in that court regarding that application.[3] By order dated September 16, 2021, the New York Supreme

[2] The Court quotes from the complaint and the other submission verbatim. All spelling, grammar, and punctuation are as in the complaint and in the other submission unless noted otherwise.

[3] Among the copies of documents that Plaintiff has attached to a "declaration" submission that she filed in this action after she filed her complaint are copies of: (1) the abovementioned Application for Court Authorization to Retain a Patient; and (2) an order issued

Court, New York County, "authorized Plaintiff's psychiatric retention for a period not to exceed sixty (60) days." (*Id.*; *see* ECF 5, at 18-19 (copy of court order).)

While Plaintiff was being treated at GSH, between July 26, 2021, and October 13, 2021, "the crown on [one of her] back [teeth] fell out." (ECF 1, at 6.) Plaintiff sought to have an emergency dental evaluation outside of GSH, but GSH's supervising psychiatrist, Chanille Young, refused her requests, "stating that [GSH] would not authorize outside dental care because of budget restrictions." (*Id.*)

On September 24, 2021, Plaintiff was informed that she was going to be transferred to the Creedmoor Psychiatric Center ("Creedmoor"), a state psychiatric hospital in Queens Village, New York.[4] Plaintiff objected to the transfer, but GSH proceeded with the transfer, which occurred on October 13, 2021. Plaintiff was administratively discharged "from a Creedmoor-operated residential program on July 14, 2023."[5] (*Id.* at 7.)

In addition to damages, Plaintiff seeks declaratory relief holding that the Defendants violated the Due Process Clause of the Fourteenth Amendment and Title II of the ADA "by facilitating [the] transfer and [the] prolonged psychiatric institutionalization without the judicial process and safeguards required by law." (*Id.* at 12-13.)

---

by the abovementioned state court in response to that application. (ECF 5, at 17-19.) It appears that Plaintiff was represented by counsel at the September 16, 2021 hearing. (*Id.* at 18.)

[4] Plaintiff asserts that the abovementioned September 16, 2021 order "did not authorize [GSH] to transfer [her] to Creedmoor." (ECF 1, at 7.)

[5] "Plaintiff was . . . placed under Creedmoor's authority for approximately twenty-one (21) months, consisting of inpatient confinement through August 3, 2022, followed by mandatory outpatient supervision until July 14, 2023." (ECF 1, at 7-8.) While being treated at Creedmoor, she "was compelled to take multiple high-does psychiatric medications." (*Id.* at 8.) Also, at Creedmoor, she was the victim of an attempted sexual assault. (*Id.* at 9.)

Moreover, Plaintiff seeks the following "ADA-compliant and constitutional safeguards" as injunctive relief:

> 1. Notice and a meaningful opportunity to be heard before any transfer or change in legal status from voluntary admission to state psychiatric custody.
>
> 2. Judicial authorization and adequate procedural review before any involuntary institutionalization or compelled retention.
>
> 3. Strict compliance with the ADA Title II integration mandate, and enforcement of Fourteenth Amendment due-process safeguards, to prevent unnecessary institutionalization of individuals with disabilities.
>
> 4. Written disclosure of the statutory 72-hour right to request discharge to all voluntary psychiatric patients, together with clear procedures for exercising that right.
>
> 5. Procedures ensuring timely access to outside emergency medical evaluation and treatment—including dental emergencies—when a serious medical condition cannot safely be managed within the psychiatric facility, including prompt assessment, emergency transportation when clinically indicated, and documentation of any delay in care.
>
> 6. Written documentation and periodic reporting requirements for all transfer and retention decisions, including the clinical and legal basis for each decision, to permit meaningful oversight and accountability.
>
> 7. Mandatory staff training regarding constitutional due-process protections, disability rights, and obligations under the [ADA].
>
> 8. Appointment of an independent compliance monitor, with periodic reporting to the Court, to oversee implementation and ensure sustained adherence to these safeguards.

(*Id.* at 13.)

In addition, Plaintiff seeks "[s]uch other and further relief as the Court deems just and proper to ensure accountability, deter recurrence, and enforce constitutional and federal law." (*Id.* at 13-14.)

## DISCUSSION

### A. Claims under Title II of the ADA

The Court must dismiss Plaintiff's claims under Title II of the ADA. That statutory provision forbids discrimination against persons with disabilities in, among other areas of public life, public services, programs, and activities. *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the ADA, a "public entity" includes: "(A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)-(B). Private health-care institutions are not considered public entities for the purposes of Title II of the ADA. *See Green v. City of New York*, 465 F.3d 65, 78-79 (2d Cir. 2006).

Both of the named Defendants, NYPH and GSH, are private health-care institutions. They are, therefore, not public entities for the purposes of Title II of the ADA. The Court therefore dismisses Plaintiff's claims under Title II of the ADA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Claims under 42 U.S.C. § 1983 and the RA

Plaintiff's claims against the NYPH and GSH under 42 U.S.C. § 1983 and the RA appear to be untimely. Within the State of New York, there is a three-year limitations period for claims brought under Section 1983 and the RA. *Owens v. Okure*, 488 U.S. 235 (1989) (adopting three-year limitations period in N.Y.C.P.LR. § 214(5) for claims under Section 1983 arising within the State of New York); *Harris v. City of New York*, 186 F.3d 243, 247-48 (2d Cir. 1999) (same as to RA). Generally, claims under Section 1983 and the RA accrue "when the plaintiff knows or has

reason to know of the injury which is the basis of [her] action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (internal quotation marks and citation omitted) (Section 1983); *Harris*, 186 F.3d at 247 (Section 1983 and the RA). "Although federal law determines when a [S]ection 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of [S]ection 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007). With respect to RA claims that are not brought by federal employees, the same is true. *See Mulkern v. New York State Police*, No. 1:08-CV-8870 (HB) (LMS), 2010 WL 5584598, at *3 (S.D.N.Y. Dec. 8, 2010), *report & recommendation adopted*, 2011 WL 135001 (S.D.N.Y. Jan. 13, 2011); *Raggi v. Wegmans Food Mkts., Inc.*, 779 F. Supp. 705, 709 (W.D.N.Y. 1991) (holding, in the RA context, that "[w]here the court has 'borrowed' the statute of limitations from New York State law, it must also apply New York State tolling provisions" (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 482-86 (1980))).

Relevant to these claims, under New York law,

> [i]f a person entitled to commence an action is under a disability because of . . . insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, . . . the time within which the action must be commenced shall be extended to three years after the disability ceases . . . . The time within which the action must be commenced shall not be extended by this provision beyond ten years after the cause of action accrues . . . .

N.Y.C.P.L.R. § 208(a). This type of tolling is available "to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society." *McCarthy v. Volkswagen of Am. Inc.*, 55 N.Y.2d 543, 548 (1982). A plaintiff "must also demonstrate that [s]he was insane at the time the cause of action accrued or that the insanity was caused by the event upon which the suit is predicated, and also that the insanity was continuous during the relevant statutory period." *Barisone v. United States Equestrian Fed'n*, No. 1:25-CV-7458 (ER), 2026 WL 2389366, at *12 (S.D.N.Y. Aug. 17, 2026). Thus, "[w]here a plaintiff experiences 'a

lucid interval of significant duration, preceded and followed by a period of insanity, the toll is lost and is not resurrected when a plaintiff relapses into insanity.'" *Id.* (citation omitted). While "[c]ourts look to the plaintiff's conduct as well as the relevant surrounding facts and circumstances," *id.*, "[u]nder New York law, psychiatric hospital patients are not entitled to per se tolling of the statute of limitations due to insanity" *Shutsha v. Cao*, No. 1:21-CV-2461 (CM), 2021 WL 1910659, at *3 (S.D.N.Y. May 10, 2021); *see Vallen v. Carrol*, No. 1:02-CV-5666 (PKC), 2005 WL 2296620, at *4 (S.D.N.Y. Sept. 20, 2005) ("[P]laintiff has had several 'retention hearings' that have resulted in findings that [Plaintiff] should remain in an institutional setting. However, [the court] still must consider whether [P]laintiff has raised a triable issue of fact as to his ability to protect his legal rights during the period for which he seeks tolling."); *see also Eisenbach v. Metro. Transp. Auth.*, 62 N.Y.2d 973 (1984) (holding that hospitalization and treatment with strong pain-killing drugs, leaving the litigant "'generally confused, disoriented, and unable to effectively attend to [his] affairs'" was insufficient for the purposes of Section 208(a) tolling). "The plaintiff bears the burden of establishing that the limitation period should be tolled." *Barisone*, 2026 WL 2389366, at *12.

Because the failure to file an action within the limitations period is an affirmative defense, Fed. R. Civ. P. 8(c)(1), a plaintiff is generally not required to plead that a claim is timely filed, *see Abbas*, 480 F.3d at 640. *Sua sponte* dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011). Generally, a court can dismiss untimely *pro se* claims *sua sponte* so long as the court grants the *pro se* litigant notice and an opportunity to be heard before dismissal. *See Abbas*, 480 F.3d at 640.

Plaintiff alleges that, on October 13, 2021, she was transferred from GSH to Creedmoor. (ECF 1, at 6.) Thus, Plaintiff's claims arising from her alleged injuries caused by the NYPH and GSH accrued, at the latest, on that date. Accordingly, at the latest, Plaintiff had three years from that date, or until October 15, 2024, to file an action asserting timely Section 1983 and RA claims arising from the alleged events regarding the NYPH and GSH.[6] Plaintiff did not file her complaint commencing this action until December 29, 2025, more than a year after the applicable limitations period had expired. Moreover, she does not allege any facts showing that, for the purposes of Section 208(a), she was insane at the time that her Section 1983 and RA claims against the NYPH and GSH accrued, which appears to be, at the latest, on October 13, 2021, when she was transferred to Creedmoor. Alternatively, she does not allege any facts showing that the events upon which her Section 1983 and RA claims against those Defendants are predicated (which, again, appear to have occurred, at the latest, on October 13, 2021) caused her to become insane. Finally, she does not allege any facts showing that she was continuously insane (including during her hospitalization at Creedmoor and thereafter) throughout the relevant three-year limitations period. Accordingly, the Court dismisses Plaintiff's claims under Section 1983 and the RA as untimely, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead her claims under Section 1983 and the RA to allege facts showing why such claims against the named Defendants are timely or why the applicable limitations period should be tolled. *See Abbas*, 480 F.3d at 640.

[6] Because the last day of that period actually fell on Sunday, October 13, 2024, and the next day, October 14, 2024, was observed as Columbus Day, the applicable limitations period expired the next court business day, Tuesday, October 15, 2024. *See* Fed. R. Civ. P. 6(a)(1)(C), (6)(A).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid claims under Section 1983 and/or the RA, the Court grants Plaintiff leave to replead those claims in an amended complaint.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order. The additional effect of that judgment will be that the Court declines to consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order. The Court dismisses Plaintiff's claims under Title II of the ADA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The also dismisses Plaintiff's claims under 42 U.S.C. § 1983 and the RA for the same reason, *see id.*, but grants Plaintiff 30 days' leave to replead those claims in an amended complaint, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in

this order. The additional effect of that judgment will be that the Court declines to consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3). Plaintiff could then seek to pursue those claims in state court.

The Court denies all pending requests in this action, including Plaintiff's request to speak with the undersigned. (ECF 11.)

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated: September 22, 2026
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge